Hancock, Jr., J.
(dissenting). I would reverse and grant a new trial. This Court’s decision is founded squarely on a mistaken assumption: that the grant of the mistrial was based "upon jury deadlock” (majority opn, at 229). The majority reasons — seizing solely on the trial court’s use of the term "hung jury” — that the mistrial could not have been granted under any subdivision in CPL 280.10. The trial court, the majority concludes, must have granted it under CPL 310.60 (1) (a) upon the ground that the jury could not agree and the court was satisfied "that any such agreement [was] unlikely within a reasonable time” (id.).
But a fair reading of the record — far from confirming the fact that the trial was aborted because the jury couldn’t agree —shows plainly that the mistrial motion was made and granted because of the prejudicial effect that continued jury deliberations would have on defendant in view of the additional coercion and stress such deliberations would produce on juror No. 4. Thus, the mistrial was declared — clearly, in my view — not under CPL 310.60, but under CPL 280.10 (1) because of a legal defect in the proceedings "which [was] prejudicial to the defendant and deprive[d] him of a fair trial” (id.). That being so, the trial court, as defendant properly argues, was without power to undo the mistrial. Once the mistrial had been granted because of prejudice to defendant, the court could not simply continue the aborted trial as if nothing had happened by proclaiming that the prejudice which it had *233 discerned a half hour before had suddenly vanished. A review of the relevant portions of the record follows.
I
Defendant’s First Mistrial Motion
The foreperson reported the jury’s verdict in the early afternoon of the second day of deliberations. After some discussion concerning the possible repugnancy of the verdict, the court decided to accept it and, on request of defense counsel, directed that the jurors be polled. At approximately 1:35 p.m., during the polling, the following occurred with respect to juror No. 4:
"the clerk: Is that your verdict, Juror 4? (Pause.) Is that your verdict, Juror 4?
"the defendant: Please don’t send me away. I didn’t do this, man, this is — this is a mistake.
"the court: I do not want to hear you make any statement. Do you understand that?
"Instruct your client that he’s not to make any statements in this courtroom at this time.
"mr. lester: Your Honor, I did.
"the clerk: Juror 4, would you please respond to the question of whether the verdict as announced by the foreperson and as announced and as recorded is the same verdict as your own personal verdict in this case. (Pause.)
"mr. lester: Judge, may we approach?
"the court: No. I would like a response from Juror Number 4.
"juror no. 4: No.
"the court: No? At this time I’m going to direct the jury go back into the jury room and continue your deliberations.
"mr. lester: Judge, before you send them back, may I make a motion not in the presence of the jury?
"the court: The jury will first step out at this time as instructed. (Jury excused.)
"the court: I’ll hear you now.
"mr. lester: Judge, the pressure on this juror is so *234 obvious. I would request this Court at this time to declare this a mistrial. The pressure on her is going to be incredible on her back in the jury room. It’s obvious in all good conscience she cannot go along with this verdict, and to put that kind of pressure on her is unfair, and it will end up ultimately being unfair to my client. ftI would request the Court to declare this a mistrial.
"the court: Motion denied” (emphasis added).
After the court’s denial of the motion, defense counsel noted on the record that juror No. 4 had taken "at a minimum, 20 seconds — closer to more like a minute — before she did say, in a low voice, 'no’ ” and that she "was crying during the time when she gave her negative response”.
Defendant’s Second Mistrial Motion
At 4:20 p.m., the court was handed a note that the jury wanted five or six additional note sheets. Shortly thereafter, it received another note stating, "the jury cannot reach a verdict. Please instruct.”
The prosecutor requested that the court give an Allen charge, but defense counsel "strongly objected] to issuing an Allen charge * * * in light of the fact that this is not the classical hung jury” (emphasis added). Defense counsel stated:
"mr. lester: * * * j believe right now the pressure on her must be incredible. I believe an Allen charge would only add to that which would allow a defective verdict to be rendered, in light of the fact that Juror 4 possibly would not agree with the verdict. There’s no way for the Court to soften the language or make the language of an Allen charge appear less stringent. * * * This is not the classic Allen charge situation, where a jury just sends out a note saying that they’re deadlocked. Now, the Court and all of us are aware of at least one individual who is in fact deadlocking the jury. I request the Court at this time declare a mistrial and — that’s defense’s request” (emphasis added).
Denial of the Allen Charge and Grant of Defendant’s Motion
The communication to the effect that the jury could not *235 agree, it must be emphasized, was the first indication from the jury that it could not reach a verdict. In deciding to deny the prosecutor’s request for an Allen charge and grant defendant’s motion, the court stated:
"The jury did have a request for instructions on the law which was rather brief. Aside from that, we did receive a notice that a verdict was reached at 1:35 and now, approximately three hours later after I had to send the jury back because of the fact that at least one juror disagreed that the jury reached a verdict, the jury has now indicated that they cannot reach a verdict.
"While I have never accepted this kind of a note from the jury the first time and have in the past always given an Allen charge on the first note, I just find that the circumstances in this case do warrant the granting of a mistrial at the request of defense counsel. And, defense counsel in this case has requested that I declare this a hung jury and grant a mistrial and I’m going to do it, under the circumstances that we have in this case. Are both sides ready to proceed with trial tomorrow?” (Emphasis added.)
II
The record, I submit, unmistakably shows that: (1) defendant’s mistrial motions were based on the prejudice that would result from the additional stress and coercion on juror No. 4 which would be entailed in further deliberations; (2) the court did not consider the situation to be a deadlocked jury warranting a mistrial under CPL 310.60 and, for that reason, did not follow its usual course of giving an Allen charge in response to the jury’s first indication that it could not agree; and (3) instead, the court granted defendant’s second mistrial motion because "the circumstances in this case [did] warrant the granting of a mistrial at the request of defense counsel”.
It is unquestioned that once this mistrial had been declared under CPL 280.10 and a new trial was ordered (see, majority opn, at 229), the granting of the mistrial was complete (see, People v Catten, 69 NY2d 547, 555). Had this been the typical grant of a mistrial because the court was "satisfied that [an agreement on a verdict was] unlikely within a reasonable *236 time” (CPL 310.60 [1] [a]) (which, I submit, the record shows it was not), the court could arguably have come to a different conclusion and retracted its earlier order when it later developed that the jurors had resolved their differences and reached a verdict. In such a hypothetical situation, there would have been no indication of pressure or stress on a particular juror and no resulting danger of a coerced verdict from further deliberations. But, that is not this case.
Here, the court unquestionably recognized from what had transpired in open court — i.e., juror No. 4’s initial failure to answer, her delay in finally responding "No”, her manifestation of emotional distress and the fact that she was crying— that there was a danger of a coerced verdict from compelling juror No. 4 to undergo more pressure from the other jurors and that continued deliberations would be "prejudicial to the defendant and deprive[ ] him of a fair trial” (CPL 280.10 [1]). Where, as here, the court concludes that continuing deliberations will deprive defendant of a fair trial because of the likelihood of coercion on a juror, it is difficult to see how the very action that produces the danger of coercion — i.e., continued deliberation — can obviate the danger. Yet, this seems to be the majority’s reasoning in equating the case with the usual hung jury mistrial and assuming that, during the half hour that elapsed after the court granted the motion, the pressure on juror No. 4 had been alleviated and that the jury was able to reach a fair verdict free from coercion. Manifestly, it is equally likely, perhaps more so, that what defense counsel and the court feared might happen did in fact happen— that juror No. 4 succumbed to the continued pressure and rendered a verdict that did not represent her considered judgment based on the evidence and the law.
What took place in the jury room after the court granted the mistrial and ordered a new trial will never be known. What is clear is that the court had concluded from its assessment of the circumstances that the danger of a coerced verdict so seriously jeopardized defendant’s fair trial rights as to warrant a mistrial. In my view, a retraction of that order— when there was reason to believe that continued deliberations would increase the pressure on juror No. 4 and the chances of a coerced verdict — constituted a serious deprivation of defendant’s State and Federal constitutional rights to a fair trial (NY Const, art I, § 6; US Const 6th Amend; see, Matter of Plummer v Rothwax, 63 NY2d 243, 253; People v Carter, 40 *237 NY2d 933, 934; People v Faber, 199 NY 256, 259; Arizona v Washington, 434 US 497, 509). I, therefore, dissent.
Chief Judge Kaye and Judges Simons, Bellacosa and Smith concur with Judge Levine; Judge Hancock, Jr., dissents and votes to reverse in a separate opinion in which Judge Titone concurs.
Order affirmed.